Magistrate Judge Tsuchida

FILED ___ ENTERED
LODGED ___ RECEIVED

OCT 02 2013

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ___ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. MJ13-487 |
|---|---|
| Plaintiff | COMPLAINT FOR VIOLATION |
| v. | Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), 846 |
| STEVEN LLOYD SADLER and JENNA M. WHITE, | |
| Defendants. | |

BEFORE, Brian A. Tsuchida, Chief United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

### COUNT 1
**(Conspiracy to Distribute Cocaine, Heroin, and Methamphetamine)**

Beginning at a time unknown, but within the last five years, and ending on or about July 31, 2013, in Bellevue, within the Western District of Washington, and elsewhere, STEVEN LLOYD SADLER, JENNA M. WHITE, and others known and unknown, knowingly and intentionally did conspire to distribute heroin, a substance controlled under Schedule I, Title 21, United States Code, Section 812, and cocaine and methamphetamine, substances controlled under Schedule II, Title 21, United States Code,

COMPLAINT/SADLER et al. - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Section 812, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

All in violation of Title 21, United States Code, Section 846.

The undersigned complainant, Christopher Armstrong, being duly sworn, further deposes and states as follows:

## INTRODUCTION

1. I am a Special Agent with the Department of Homeland Security, United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since September of 2004. During my tenure with HSI and ICE, I have been assigned to the Border Enforcement Security Taskforce and have led and participated in numerous investigations and search warrants involving smuggling, drug trafficking, fraud, intellectual property theft, money laundering, child exploitation, and work-site enforcement. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program in Brunswick, Georgia, as well as the Immigration and Customs Enforcement Special Agent Training program. Because of my experience and training, I am familiar with common methods of investigating drug trafficking and have become familiar with methods of operation of drug traffickers and manufacturers, including, but not limited to: their methods of importing, exporting, storing, concealing, and packaging drugs; their methods of transferring and distributing drugs; their use of cellular telephones and telephone pagers; their use of counter-surveillance; and other methods of avoiding detection of law enforcement. I am a graduate of the University of Washington, where I received a Bachelor's degree in Political Science and Laws, Societies and Justice. Prior to my employment with HSI/ICE, I served on active duty in the United States Air Force for four years.

2. The facts set forth in this Affidavit are based on my own personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating

witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint, it does not set forth each and every fact that I, or others, have learned during the course of this investigation.

## SUMMARY OF PROBABLE CAUSE

### A. The September 2012 Seizures

4. On September 18, 2012, United States Postal Inspection Service Inspector Willyerd removed an express mail package from the mail stream during an interdiction targeting narcotics trafficking. The package was addressed to Ian Wilson, 2555 Homestead Rd, #46, Santa Clara CA 95051. The sender was listed as Virginia Lillibridge, 20033 Birch Way, Lynnwood, WA 98036. Inspector Willyerd contacted the resident of the Lynnwood address who confirmed that no one by the name of Virginia Lillibridge lived at the address. The resident said he/she had no objection to his opening the package. A narcotics-detection dog alerted to the presence of controlled substances in the package. Inspector Willyerd opened the package without a warrant and located a substance that, based upon his training and experience, he believed to be heroin.[1] The heroin was hidden inside a birthday card and some scented markers.

5. On that same day, another inspector removed from the mail stream a separate package as part of the interdiction. At the time that the package was removed from the mail stream, the inspector was unaware of the package that is detailed above. The package was shipped from Edward Harlow, 17701 108th Ave SE, Suite, 416, Renton, Washington 98055, and addressed to Michael Shapiro, 2395 Earls Ct., Los Angeles, California 90077. A narcotics-detection dog alerted to the presence of narcotics

---

[1] Inspector Willyerd investigates cases involving narcotics that are shipped via U.S. mail. He has received specialized training regarding illegal narcotics.

COMPLAINT/SADLER et al. - 3

in the package. The inspector applied for a search warrant for the package. The inspector noted in his search warrant affidavit that the package contained similar handwriting, was of the same size, and bore the same type of postage stamp, compared to the first package that the inspector had opened without a warrant. Law enforcement opened the second package pursuant to the warrant, and did not locate any narcotics in the package. Law enforcement did, however, locate $3200 in cash.

6. On September 20, 2012, Inspector Willyerd obtained search warrants with respect to three additional packages that were pulled from the mail stream during the interdiction. The three packages were sent from Simone Phimpiela, 21131 Locust Way, Lynnwood, Washington 98036, and were addressed to individuals in Florida, California, and New York. The return address for the three packages did not exist. Moreover, a narcotics-detection dog alerted to the presence of narcotics in the packages. Inspector Willyerd noted in his search warrant affidavit that the packages contained similar handwriting, were of the same size, and bore the same type of postage stamp, compared to the packages mentioned above.

7. On September 21, 2012, another package was removed from the mail stream during the interdiction. The package was addressed from Mary Silverson, 15703 48th Avenue West, Edmonds Washington 98026, and addressed to John Stapleton, 1204 South Alfred Street, Apartment 221D, Alexandria, Virginia. Inspector Willyerd spoke with the resident at the Edmonds address who confirmed that no one named Mary Silverson lived at the address. The resident said he/she had no objection to Inspector Willyerd opening the package. A narcotics-detection dog alerted to the presence of controlled substances in the package. Inspector Willyerd opened the package without a warrant and located a substance that, based upon his training and experience, he believed to be heroin.

B. **Tracing the Sender of the $3200 Package**

8. The return address for the package that contained the $3200 in currency corresponded to a UPS store. The store provided Inspector Willyerd a copy of the

application for postal box 416. The name on the application was Edward Harlow. The person who opened the box provided an Illinois driver's license in this name. The driver's license listed an address of 1522 N. LA Cresta Avenue, Bellevue, Illinois 61604, and a date of birth of September 12, 1974. The person who opened the box also provided a vehicle insurance card using the same name and address.

9. The manager at the store told Inspector Willyerd that an "Edward Harlow" had opened a box at a separate UPS store located at 14201 SE Petrovisky Rd, #A3, Renton, Washington 98058. The manager at this store confirmed that the person who opened this box had provided the same driver's license and insurance card that was provided in connection with the other box.

10. Inspector Willyerd contacted other UPS stores to inquire whether "Edward Harlow" had any additional boxes. An Edward Harlow was associated with a box at the UPS store located at 325 Washington Ave S. #212, Kent, Washington 98032. The name "Aaron Thompson" also was associated with this box. "Aaron Thompson" had provided an Illinois driver's license that listed an address of 106 S. 9th Street, Bellevue, Illinois 61604. "Aaron Thompson" also provided an insurance card from the same company as the card provided in the name of Edward Harlow. UPS advised Inspector Willyerd that "Aaron Thompson" also had rented a separate box in Tukwila using the same identification documents.

11. The Postal Inspection Service National Law Enforcement Communication Center confirmed for Inspector Willyerd that the two driver's licenses mentioned above were not valid licenses.

12. On November 20, 2012, the Riverton Heights Post Office contacted Inspector Willyerd about a package that was addressed to the Tukwila post box that was rented in the name of Aaron Thompson. The package was addressed to NW March Supply, c/o, A. Thompson, 100 Andover Park West Suite 150-303, Tukwila, Washington. The sender was from someone in Pakistan. A narcotics-detection dog alerted to the presence of narcotics in the package. Inspector Willyerd contacted me, and I opened the

1 package as part of a customs search. The package contained 900 suspected tablets of
2 Alprazolam, which is a scheduled IV controlled substance. Agents removed the
3 suspected narcotics and re-packaged the package with the hope of identifying the person
4 who was to pick up the package. No one, however, came to retrieve the package.

        **C.**    **Riverton Heights Post Office Mailings and Subsequent Investigation**

6       13. In December 2012, Inspector Willyerd visited the Riverton Heights Post
7 Office. Inspector Willyerd looked for packages that were similar to the $3200 package
8 and other packages that had been seized in September 2012. In particular, Inspector
9 Willyerd looked for packages that contained similar handwriting and Express mail
10 postage stamps compared to the other packages. He located one such package. He asked
11 the clerks to alert him if they came across any subsequent packages that looked similar,
12 and released the package back into the mail stream. On January 2013, Inspector Willyerd
13 visited the Riverton Heights Post Office again. He again selected a package that looked
14 like the packages that he had seized in September pursuant to the search warrants, and
15 showed the package to the clerks. He also released this package to the mail stream.

16       14. Multiple clerks advised Inspector Willyerd that they recalled a blonde
17 female purchasing Express mail postage stamps and dropping off packages that contained
18 similar handwriting compared to the examples he had shown the clerks. Inspector
19 Willyerd subsequently obtained a photograph of the female from the post office's
20 surveillance system.

21       15. On December 17, 2012, a Riverton Heights Post Office employee advised
22 Inspector Willyerd that she had seen the blonde female again at the post office. The
23 employee noted that the female was driving an Audi bearing license plate number
24 AGR4821 ("the Audi"). Department of Licensing records show that this car is leased to
25 STEVEN SADLER at his residence in Bellevue, Washington.[2]

---

[2] Sadler and White both reside at this residence, a condominium According to the lease agreement, Sadler is the tenant at the condominium. Additionally, Sadler's, Chase bank

COMPLAINT/SADLER et al. - 6

16. Inspector Willyerd showed the driver's license photograph of SADLER and the surveillance photograph of the female to employees at the Renton and Tukwila UPS stores mentioned above. An employee in the Renton store identified SADLER as being "Edward Harlow." The employee did not recall ever seeing the female. Two employees in the Tukwila store identified SADLER as being "Aaron Thompson." The employees identified the female as picking up and dropping off packages, and that she described herself as Thompson's girlfriend.

17. Law enforcement subsequently conducted surveillance at SADLER's residence in Bellevue, and spotted the female. She was identified as JENNA WHITE, and she was seen driving the Audi on March 14, 2013.

18. In February 2013, the UPS store in Tukwila notified Inspector Willyerd about a package that was addressed to Aaron Thompson that had been delivered to the store. Inspector Willyerd obtained a search warrant for the package. The package contained a Sports Illustrated DVD. Nine grams of a substance that field tested positive for methamphetamine was secreted inside of the DVD case.

19. On March 11, 2013, Inspector Willyerd obtained a search warrant for a package that he removed from the mail stream during an interdiction that contained similar handwriting and postage compared to the packages that were seized in September 2012 pursuant to the search warrants. The package was addressed to an individual in Alaska. The package contained 1.48 grams of a substance that field tested positive for heroin and 1.45 grams of a substance that tested positive for cocaine.

---

accounts, Comcast Cable account, Verizon Cellular subscriber information, vehicle registration, as well as his Washington State Driver's License, all indicate that his residence is the condominium. According to Jenna White's Wells Fargo bank account, her vehicle registration and her Washington State Driver's License, this residence is her current address. She also has received several packages addressed to her at the residence. Furthermore, surveillance by law enforcement on multiple occasions, as well as GPS tracker history, indicate that Sadler and White currently live at the residence.

COMPLAINT/SADLER et al. - 7

20.     On March 12, 2013, Inspector Willyerd obtained an anticipatory search warrant in connection with the delivery of the package. The recipient of the package subsequently agreed to cooperate in connection with the hope of reducing state felony charges. The recipient said he had purchased the drugs from "NOD" on the Silk Road.

21.     The Silk Road is an online international marketplace that allowed its users to buy and sell controlled dangerous substances, including cocaine, and other contraband over the Internet.[3] The Silk Road is accessible via a website. The Silk Road has protected the anonymity of its users in several ways, including by using Tor technology. Tor is a system intended to enable online anonymity. Tor software routes the user's Internet traffic through a worldwide network of volunteer servers to conceal a user's location and Internet usage. Tor communications also are encrypted to conceal the contents of communications to all parties except for the intended recipient.

22.     As a further measure to protect the anonymity of its users, the Silk Road requires all transactions to be conducted in Bitcoin. Bitcoin is an electronic, cryptographically based currency that had no association with banks or a government. Bitcoin is used because it is difficult to track and easy to move online.

23.     Silk Road users have to create an account and a username. Silk Road users are instructed to use aliases as their username and never to disclose their true name.

24.     NOD's Silk Road profile states that he has conducted numerous sales of illegal narcotics using the website. Indeed, his profile states that he is in the top one percent of sellers on the website. The profile states that NOD uses the United States Postal Service to transport the drugs. His profile lists cocaine, methamphetamine, and heroin for sale in various quantities.

25.     On April 8, 2013, Inspector Willyerd directed the recipient of the Alaska package to purchase one gram of heroin and .5 grams of cocaine from NOD using the Silk Road website. On April 11, 2013, a package was seized in Alaska that was sent to

---

[3] On or about October 2, 2013, the Silk Road website was seized by law enforcement.

COMPLAINT/SADLER et al. - 8

1 | the recipient. Postal records show that the package was shipped from Kenmore,
2 | Washington, on April 10, 2013. The package contained substances believed to be heroin
3 | and cocaine that were hidden inside the package.

26. On May 1, 2003, agents spotted the Audi parked at the Bellevue residence of STEVEN SADLER and JENNA WHITE. Agents spotted a BMW (the "BMW") at this residence as well. Department of Licensing records show that JENNA WHITE titled this car on April 23, 2013. The records show that she was gifted the car on March 29, 2013.

### D. The Tracking Devices

27. On May 9, 2013, Inspector Willyerd applied for and obtained warrants authorizing the installation of tracking devices for the Audi and the BMW. The tracking devices were installed on the vehicles on May 14, 2013. On June 19, 2013, I applied for and obtained warrants re-authorizing the use of the tracking devices. Thus, the tracking devices have been in operation on the vehicles from May 14, 2013, through the date of this application. Since May 14, 2013, agents have monitored the tracking devices on a remote, web-based program. Agents have observed the vehicles travel to numerous locations, including 38 post offices in the greater Seattle area:

**Post Offices Visited by the AUDI**

Bellevue Post Office; 11405 NE 2nd Pl. Bellevue, WA
Bellevue Post Office; 15731 NE 8th St. Bellevue, WA
Renton Post Office; 314 Williams Ave. S Renton, WA
Lacey Post Office; 5815 Lacey Blvd. SE Olympia, WA
Olympia Post Office; 900 Jefferson St. SE, Olympia, WA
Tumwater Post Office; 200 Isreal Road SE Tumwater, WA
Lakewood Post Office; 5409 100th St. SW, Lakewood, WA
Tacoma Post Office; 320 Garfield St. South Tacoma, WA
Spanaway Post Office; 16815 Pacific Ave. S, Spanaway, WA
Puyallup Post Office; 13516 Meridian Ave. East, Puyallup, WA
Issaquah Post Office; 400 NW Gilman Blvd. Issaquah, WA
Federal Way Post Office; 31811 Pacific Highway South Federal Way, WA
SeaTac Post Office; 15250 32nd Ave. S SeaTac, WA
Renton Post Office; 4301 Northeast 4th St. Renton, WA

Puyallup Post Office; 204 2nd St. SW Puyallup, WA
Federal Way Post Office; 1815 SW Campus Dr. Federal Way, WA
Arlington Post Office; 3621 168th Street Northeast, Arlington, WA
North Lakewood Post Office; 1610 172nd St. NE, North Lakewood, WA
Woodinville Post Office; 17610 Woodinville Snohomish Road, Woodinville, WA
Kirkland Post Office; 721 4th Ave. Kirkland, WA
Kenmore Post Office; 6700 NE 181st St. Kenmore, WA

**Visited by the BMW**

Bellevue Post Office; 11405 NE 2nd Pl. Bellevue, WA
Bellevue Post Office; 15731 NE 8th St. Bellevue, WA
Mercer Island Post Office; 3040 78th Ave. SE Mercer Island, WA
Seattle Post Office; 7724 35th Ave. NE
Seattle Post Office; 2420 4th Ave. South Seattle, WA
Seattle Post Office; 620 S Orcas St. Seattle, WA
Seattle Post Office; 91 S Jackson St. Seattle, WA
Seattle Post Office; 414 6th Ave. S Seattle, WA
Federal Way Post Office; 1815 Southwest Campus Dr. Federal Way, WA
Auburn Post Office; 11 3rd St. NW Auburn, WA
Bellingham Post Office; 315 Prospect St. Bellingham, WA
Bellingham Post Office; 104 West Magnolia St. Bellingham, WA
Kingston Post Office; 10990 Northeast State Highway 104, Kingston, WA
Indianola Post Office; 9200 Northeast Shore Dr. Indianola, WA
Suquamish Post Office; 18485 Augusta Ave. NE Suquamish, WA
Bellingham Post Office; 3150 Orleans St. Bellingham, WA
Bainbridge Island Post Office; 271 Winslow Way E, Bainbridge Island, WA
Bainbridge Island Post Office; 10355 Northeast Valley Road Bainbridge Island, WA
University District Post Office; 1329 N 47th St. Seattle, WA
Northgate Post Office; 11036 8th Ave. NE Seattle, WA

28. On June 4, 2013, Inspector Willyerd and I conducted mobile surveillance of WHITE in the BMW, shortly after observing on the tracker program that the vehicle had traveled to the post office located at 15731 NE 8th St. Bellevue, WA. We attempted to observe the vehicle at the post office, but it had already left the area. We caught up with the vehicle soon thereafter and observed that JENNA WHITE was driving the vehicle.

29. At approximately 3:00 p.m., Inspector Willyerd and I returned to the post office located at 15731 NE 8th St. Bellevue. We requested that the parcels that had been dropped off at the post office's drop boxes be inspected. We discovered three Express mail parcels at the top of the bin from the outside drop box that matched JENNA WHITE's handwriting. All three parcels had the same "Grand Central Terminal" $19.95 stamp. The sender and recipient information are listed below.

Parcel 1:
From: Mandy Peters; 2929 76th Ave SE #408 Mercer Island, WA 98040
To: Bethesda Infotech; 4800 Hampden Lane #200 Bethesda, MD 20814

Parcel 2:
From: Mandy Peters; 2929 76th Ave SE #408 Mercer Island, WA 98040
To: Northern Tool Parts; 22 North Front St #201 New Paltz, NY 12516

Parcel 3:
From: Amy Wilson; 13752 36th Ave NE Seattle, WA 98125
To: Jaret Walker, C/O Ingram Haus; 1012 Elysian Fields, New Orleans, LA 70117

30. According to the tracking data, the BMW had traveled to a separate post office in Bellevue shortly before arriving at the post office mentioned above.

31. On June 12, 2013, Postal Inspector Brett Willyerd and I, acting in an undercover capacity, accessed the Silk Road website and conducted a controlled purchase of 3.5 grams of cocaine from "NOD." The purchase was made via a Confidential Informant's (CI) account.

32. On the same day, agents conducted surveillance in an attempt to observe SADLER and/or WHITE drop off the control buy parcel at a post office or USPS collection box. While conducting surveillance, agents monitored the GPS tracker devices in an attempt to observe movement of the BMW or the Audi. While conducting the surveillance, I checked the CI's Silk Road account and discovered a message to the CI from NOD. The message written by NOD said that he was "sending from the road" and was utilizing a mobile device to access the Silk Road. Surveillance results were negative. Neither the BMW nor the Audi were observed leaving SADLER's Bellevue residence.

Moreover, the tracking data showed that the vehicles remained stationary. Inspector Willyerd placed a parcel watch at the processing plant in Tukwila, for the parcel to the CI.

33. On June 13, 2013, Inspector Willyerd was notified by a postal clerk that an express parcel addressed to the CI was identified at the Seattle processing plant. Inspector Willyerd retrieved the Express Mail parcel, which was shipped from West Hollywood, CA. Inspector Willyerd observed the handwriting on the label to be the same as SADLER's. We opened the package and found a sealed padded envelope with "3.5c" written on the top. Inside this envelope was a vacuum-sealed bag. Within the vacuum-sealed bag was another zip-lock baggie containing a substance that he recognized as cocaine, which was one solid piece/rock, rather than powder cocaine. We observed "3GTJ" written in black marker on the top of the zip-lock baggie. The cocaine and the small zip lock baggie together weighed four grams. The substance field tested positively for cocaine.

34. Between May 30, 2013 and June 17, 2013, STEVEN SADLER was suspected to be out of town, *i.e.* not in the Seattle/Bellevue area. In addition to the Silk Road message saying he was "sending from the road," and the abovementioned parcel being shipped from West Hollywood, his Audi did not move and a source of information (SOI) reported not seeing him at his residence during that timeframe.

35. According to the tracker program, SADLER's vehicle became active again on June 17, 2013. On June 20, 2013, I accessed the CI's Silk Road account and observed that there were two new messages from NOD. The first one was dated approximately June 16, 2013, said he was "still working from the road and should be settled in this week to talk more." The second message was dated approximately June 17, 2013, and said, "I'm back - how are you doing?"

36. On June 20, 2013, I conducted mobile surveillance at the Sadler and White's Bellevue residence. At approximately 1:00 p.m., I observed WHITE and an

unidentified male get into the BMW. I followed them into Seattle to the Bainbridge Island ferry terminal.

37. I subsequently reviewed the tracker program and observed that the BMW traveled on the ferry, and then went directly to the post office located at 271 Winslow Way East. The vehicle remained there for approximately ten minutes. The vehicle then went directly to another post office, located at 10355 Northeast Valley Road. The vehicle remained at the post office for approximately two minutes, and then returned to the ferry to Seattle.

38. On July 8, 2013, Postal Inspector Brett Willyerd and I, acting in an undercover capacity, accessed the Silk Road website and conducted a controlled purchase of two grams of cocaine from "NOD." The purchase was made via a Confidential Informant's (CI) account.

39. On the same day, we conducted mobile surveillance in an attempt to observe SADLER and/or WHITE drop off the controlled-buy parcel at a post office or USPS collection box. At approximately 12:59 p.m., Inspector Willyerd and I observed WHITE departing the parking garage at her Bellevue residence. She was driving alone in the BMW.

40. We followed WHITE directly to a post office, located at 414 6th Avenue South, Seattle. Inspector Willyerd and I could not get into position to observe WHITE go inside the post office, or drop parcels off, but we did observe her driving on South King Street and 6th Avenue South, which is the intersection where the post office is located. Furthermore, Intelligence Research Specialist (IRS) Jason Royal was actively monitoring the tracker program and observed that at approximately 1:19 pm, WHITE's vehicle arrived at the post office and was there for approximately five minutes.

41. At approximately 1:24 p.m., we followed her from the post office on 6th Avenue South to another post office located at 91 South Jackson Street, Seattle. Inspector Willyerd and I observed her BMW parked directly in front of the post office at approximately 1:29 p.m. At approximately 1:34 pm, Inspector Willyerd observed

1 WHITE get back into her BMW and depart the post office. Additionally, IRS Royal was
2 monitoring the tracker program and observed the vehicle arrive and depart the post office.
3     42.    At approximately 2:30 p.m., Inspector Willyerd returned to the post office
4 on 6th Avenue South and looked at all the parcels recently dropped off in the curbside
5 and lobby collection boxes. Inspector Willyerd discovered three Express Mail parcels in
6 the post office lobby collection box matching the handwriting of the previously profiled
7 express labels. The parcel labels appeared to match WHITE's handwriting. One of the
8 parcels was addressed to the CI.
9     43.    Inspector Willyerd and I opened the CI package. The package contained a
10 sealed padded envelope with "2.0c" written on the bottom. Inside the envelope was
11 another white envelope. Inside the white envelope was a gift envelope with a roll of
12 decorative tissue inside. We unrolled the tissue and found a vacuum-sealed bag. Within
13 the vacuum-sealed bag was another zip-lock baggie containing suspected cocaine. We
14 observed "2.0T-M" written in black marker on the top of the zip-lock baggie. The
15 cocaine and the small zip lock baggie that contained it together weighed 2.2 grams. A
16 NIK field test positively identified the substance as cocaine.

   **E.   NOD's Silk Road Profile**

18     44.    As mentioned above, SADLER is believed to be selling narcotics under the
19 name "NOD" on the Silk Road. On July 10 and 11, 2013, acting in an undercover
20 capacity, I accessed NOD's page on Silk Road website.
21     45.    I observed the first page of approximately 142 customer feedback pages.
22 Each page contained 10 separate customer reviews. In the left-most column was the
23 "rating" of the product(s), which were mostly listed as "5 of 5." In the next column was a
24 "review," which provided various comments on NOD's quality of products, customer
25 service, purchase transaction, and shipping. The next column was titled "freshness" and
26 was an amount of time in chronological order. The first review had a corresponding
27 freshness time of "49 minutes." The last review on the last page had a freshness of "4

months." The last column on the right was titled "item." For each of the reviews, the item column provided a corresponding link to one of the following product sold by NOD:

    2 grams Cocaine   "1980s Time Machine"

    7 grams Cocaine   "Coke so awesome this girl will rock you for some"

    3.5 grams Methamphetamine   "Really tasty looking methamphetamine"

    3 grams Heroin   "3GMs of extreme heroin"

    3.5 grams Cocaine   "SRs highest quality cocaine directly off the brick"

    1 gram Cocaine   "Cocaine cut directly off the brick"

    2 grams Heroin   "2GMs of extreme heroin"

    1 gram Heroin   "The best BTH anywhere – sat arrival guaranteed"

    1 gram Heroin   "Extreme quality Black Tar"

    46.    Based on the amount of customer reviews per page (10), and the amount of pages (approximately 142), there appears to be over 1400 reviews for individual sales/purchase of small amounts of cocaine, heroin and methamphetamine. I reviewed and recorded all of the pages and linked items and created a spreadsheet totaling the amounts of each. The approximate totals of suspected drug sales over the last four months are listed below:

    2629.5 grams of Cocaine

    593 grams of Heroin

    105 grams of Methamphetamine

    47.    According to the Silk Road, NOD has been a vendor for one year and is ranked in the top 1% of sellers (this is up from his previous ranking of being in the top 2%). Because the customer reviews only go back 4 months, I could not access or record transaction prior to approximately March 2013. Therefore, there are approximately eight additional months of suspected drug sales that are unaccounted for.

## CONCLUSION

48. Based on the foregoing, I submit that there is probable cause to believe that STEVEN SADLER and JENNA WHITE have conspired to distribute cocaine, heroin, and methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and 846.

                                _____
                                Christopher Armstrong, Complainant
                                Special Agent, ICE, HSI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendants committed the offense set forth in the Complaint.

Dated this ___2___ day of October, 2013.

                                _____
                                THE HONORABLE Brian A. Tsuchida
                                United States Magistrate Judge